**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RECKITT BENCKISER PHARMACEUTICALS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> BIODELIVERY SCIENCES INTERNATIONAL, INC., et al., <br><br> Defendants. | Civil Action No. 14-5892 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This patent infringement action comes before the Court on Defendants BioDelivery Sciences International, Inc. ("BDSI") and Quintiles Commercial US, Inc.'s ("Quintiles") (collectively, "Defendants") motion to transfer, pursuant to 28 U.S.C. § 1404(a) (ECF No. 13), and motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14). Plaintiffs Reckitt Benckiser Pharmaceuticals, Inc. ("RBP") and MonoSol Rx, LLC ("MonoSol") (collectively, "Plaintiffs") opposed the motions (ECF No. 21, 22), and Defendants replied (ECF No. 24, 25). The Court has carefully considered the submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to transfer venue to the Eastern District of North Carolina ("EDNC") is granted. Because the Court has granted the motion to transfer, it declines to consider Defendants' motion to dismiss.[1]

---

[1] The Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §§ 1331 and 1338(a).

I. **Background**

MonoSol is incorporated in Delaware with its principal place of business in New Jersey. (Compl. ¶ 7, ECF No. 1.) RBP is incorporated in Delaware with its principal place of business in Virginia. (*Id.* ¶ 8.) MonoSol exclusively manufactures, and RBP exclusively sells, Suboxone® sublingual film ("Suboxone"), a treatment for opioid dependence, in the United States. (*Id.* ¶ 3.) This action concerns the alleged infringement of a patent related to Suboxone, U.S. Patent No. 8,765,167 (the "'167 patent"). (Pls.' Opp'n Br. to Mot. to Dismiss 1, ECF No. 22.) The '167 Patent is owned by MonoSol, and RBP is its exclusive licensee. (Compl. ¶¶ 15-16.)

BDSI is incorporated in Delaware with its principal place of business in North Carolina. (Compl. ¶ 9; Decl. of Andrew L. Finn ("Finn Decl.") ¶ 2, ECF No. 13-17.) BDSI manufactures and sells Bunavail™ ("Bunavail"), a mucoadhesive buccal film dosage unit designed for the treatment of narcotic dependence. (Compl. ¶ 6; Decl. of Scott S. Christie ("Christie Decl."), Ex. 5 ¶ 19, ECF No. 13-8.) The development and marketing of Bunavail have been directed from BDSI's North Carolina headquarters. (Finn Decl. ¶ 3.) Furthermore, BDSI's records relating to Bunavail are also stored there. (*Id.* ¶ 5.)

Quintiles is incorporated in Delaware with its principal place of business in New Jersey. (Compl. ¶ 10.) On September 30, 2013, BDSI entered into an agreement with Quintiles to assist BDSI in its sale of Bunavail. (Finn Decl. ¶ 6; Compl. ¶¶ 5, 20.) Quintiles has begun providing these services to BDSI. (Compl. ¶¶ 5-6, 12.) In this action, Plaintiffs allege that Defendants' manufacture and sale of Bunavail infringes the '167 Patent. (*Id.* ¶¶ 22-28.)

2

Two related lawsuits inform the Court's decision here. On October 29, 2013, RBP and MonoSol[2] filed suit for patent infringement against BDSI in the EDNC. (Christie Decl., Ex. 1, ECF No. 13-4.) There, RBP and MonoSol specifically alleged that Bunavail infringed U.S. Patent No. 8,475,832 (the "'832 Patent"). (*Id.* ¶¶ 42-51.) RBP and MonoSol both claimed to be exclusive licensees of the Patent. (Christie Decl., Ex. 5 ¶ 9.) The '832 Patent is entitled "Sublingual and Buccal Film Compositions," and it "is directed generally to film dosage compositions, film formulations, and methods of treating narcotic dependence." (*Id.* (internal quotation marks omitted).) On December 13, 2013, BDSI moved to dismiss the complaint, and the court granted the motion on May 21, 2014. (Christie Decl. ¶¶ 4, 6.)

On September 20, 2014, BDSI filed a declaratory judgment action in the EDNC against RPB and MonoSol,[3] seeking a declaration that BDSI's Bunavail does not infringe the '832 Patent or U.S. Patent No. 7,897,080 (the "'080 Patent").[4] (*Id.* ¶ 7.) The '080 Patent is owned by MonoSol, and RBP is its exclusive licensee. (Christie Decl., Ex. 5 ¶ 11.) The '080 Patent is entitled "Polyethylene-Oxide Based Films and Drug Delivery Systems Made Therefrom," and it states that it "is directed to processes for making a film." (*Id.*) The declaratory judgment action is currently

---

[2] There was a third Plaintiff in that action, RB Pharmaceuticals Limited ("RBP UK"). RBP UK appears to be part of the same general corporate family as RBP and, as a plaintiff in that case, claimed to own the '832 Patent. (*See* Defs.' Reply Br. 3 n.3, ECF No. 24.) Because neither party argues that the presence of RBP UK in that action affects the Court's analysis here, the Court will disregard it for purposes of this motion.

[3] The declaratory judgment action also named RBP UK as a defendant. *See supra* note 2.

[4] The declaratory judgment action also asked the court to declare that Bunavail did not infringe a third patent, but that claim was subsequently dismissed voluntarily. (Christie Decl., Ex. 5 ¶ 1; Defs.' Moving Br. 4, n.2, ECF No. 13-2.)

pending. *See BioDelivery Scis. Int'l, Inc. v. Reckitt Benckiser Pharms., Inc.*, No. 14-529 (E.D.N.C. filed Sept. 20, 2014.)

On September 22, 2014, Plaintiffs filed this action, alleging that Bunavail infringed the '167 Patent. The '167 Patent is owned by MonoSol, and RBP is its exclusive licensee. (Compl. ¶¶ 15-16.) The '167 Patent is entitled "Uniform Films for Rapid-dissolve Dosage Form Incorporating Anti-tacking Compositions" and is directed towards pharmaceutical film and the processes for making it. (*Id.* ¶ 15; Ex. A-1, U.S. Patent No. 8,765,167, Abstract (filed Sep. 8, 2006), ECF No. 1-2.) Defendants now seek to transfer venue to the EDNC where the previous and ongoing litigation regarding Bunavail is located.

## II.     Legal Standard[5]

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is the movant's burden to prove that transfer is necessary. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In analyzing whether a case should be transferred under § 1404(a), a court must engage in a two-part analysis. *Bayer Pharma AG v. Watson Labs., Inc.*, No. 14-1804, 2014 WL 2516412, at *3 (D.N.J. June 2, 2014). As a threshold matter, the court must first analyze whether the transferee

---

[5] Although this case falls under the exclusive appellate jurisdiction of the Federal Circuit, *see* 28 U.S.C. § 1295(a)(1), the Court will follow Third Circuit precedent since a § 1404(a) motion does not involve substantive issues of patent law. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ("Because [a § 1404(a) motion] does not involve substantive issues of patent law, [the Federal Circuit] applies the laws of the regional circuit in which the district court sits.") (internal citations omitted); *see also LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, Nos. 10-4615, 10-6699, 2014 WL 284238, at *4 (D.N.J. Jan. 24, 2014) (applying *TS Tech*).

forum is a "district or division where [the action] might have been brought." § 1404(a); *see Sunbelt Corp. v. Noble, Denton, & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993) (denying § 1404(a) motion to transfer because action could not have been brought in transferee forum).

The second part of the analysis requires the Court to determine whether transferring the case would, in fact, be "for the convenience of the parties and witnesses [and] in the interest of justice." § 1404(a); *Bayer Pharma*, 2014 WL 2516412, at *3. In analyzing whether this second prong of the analysis has been met, the Third Circuit has laid out private and public interest factors that a court should balance. *Jumara*, 55 F.3d at 879-80. The private interest factors are:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (internal citations omitted). The public interest factors are:

> [1] the enforceability of the judgment; [2] practical considerations that could have made the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted). There is no mechanical rule governing how a district court must balance these factors. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)).

### III. Analysis: Motion to Transfer

#### A. Proper Venue

The transferee forum must be a "district or division where [the action] might have been brought," if the defendant would be subject to its court's personal jurisdiction. § 1404(a); *see*

*Bayer Pharma*, 2014 WL 2516412, at *3-4 (holding an action might have been brought in transferee district if venue is proper); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 2008) (holding venue is proper in a patent infringement action if the defendant would be subject to the court's personal jurisdiction).

In North Carolina, a federal court may exercise personal jurisdiction over a non-resident defendant where North Carolina's long arm-statute authorizes it and where exercising that personal jurisdiction would not violate the Fourteenth Amendment's due process requirement that the defendant have sufficient minimum contacts with the forum state. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). In the present case, transfer to the EDNC would not violate due process requirements that the defendant have sufficient minimum contacts with the forum state by exercising personal jurisdiction over BDSI because its principal place of business is there. (Compl. ¶ 9); *see Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (stating court does not violate due process requirements when exercising jurisdiction over a defendant corporation in a district where its principal place of business is located.) In addition, the court in the EDNC would not violate due process requirements by exercising jurisdiction over Quintiles since it consents to personal jurisdiction there. (Defs.' Moving Br. 9); *see NCR Credit Corp. v. Ye Seekers Horizon*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Otsuka Pharm. Co., Ltd., v. Mylan, Inc.*, No. 14-4508, 2015 WL 1305764, at *9 (D.N.J. Mar. 23, 2015) ("it cannot be genuinely disputed that consent . . . remains a valid basis for personal jurisdiction").

### B.    Private and Public Interest factors

#### 1.    Private Interest Factors[6]

The Third Circuit has instructed district courts to consider Plaintiffs' forum preference as a factor in considering whether to grant transfer. *Jumara*, 55 F.3d at 879. Generally, a plaintiff's choice of a forum as a factor in the analysis, disfavors transfer. *See Bayer Pharma*, 2014 WL 2516412, at *5. However, where the central facts of the lawsuit occur outside of Plaintiffs' forum choice, this factor becomes neutral to the transfer analysis. *NCR Credit Corp.*, 17 F. Supp. 2d at 321. In a patent infringement case, relevant factors to consider when determining where the central facts of the lawsuit took place are where the development, production, and management of sales and marketing of the allegedly infringing product took place. *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 & n.17 (D.N.J. 1993).

The central facts of this lawsuit, as it relates to BDSI's allegedly infringing activities, have occurred in North Carolina, outside of Plaintiffs' choice of forum. BDSI's research and development of Bunavail, as well as its related promotional and marketing activities, all occurred at its North Carolina headquarters. (Finn Decl. ¶ 3.) Accordingly, Plaintiffs' choice of forum should be accorded less deference.

Plaintiffs argue that their preference should still be accorded deference because Defendants do not deny that some sales of Bunavail may have occurred in New Jersey. (Pls.' Opp'n Br. 9, ECF No. 21; *see* Defs.' Moving Br. 5.) The Court finds this argument unpersuasive. As discussed, in a patent infringement action, the central facts of the case involve the development, production,

---

[6] The Court will not discuss the private interest factor of Defendants' choice of forum, *see Jumara*, 55 F.3d at 879, as other courts in this district generally do not independently address it in a transfer analysis. *See Bayer Pharma*, 2014 WL 2516412, at *5; *COA Network, Inc. v. J2 Global Commc'ns, Inc.*, No. 09-6505, 2010 WL 2539692, at *3 (D.N.J. June 17, 2010). Even absent consideration of this factor, the private interest factors overall favor Defendants.

and management of the allegedly infringing product. *See Ricoh*, 817 F. Supp. at 481 & n.17. Limited and speculative market activity in New Jersey will not override the fact that all the central facts of the suit occurred in North Carolina. *See COA Network*, 2010 WL 2539692, at *3.

Furthermore, the Court finds that the allegedly infringing acts of Quintiles, whose principal place of business is in New Jersey (Compl. ¶ 10), do not affect the determination that the central facts of this lawsuit occurred outside of Plaintiffs' chosen forum. Quintiles can only be liable for infringement through its sales of Bunavail if BDSI first infringed. *See Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1295-96 (Fed. Cir. 2012) (holding defendant liable for direct infringement through sales of product after implicitly determining that production of the product directly infringed patents); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("there can be no inducement or contributory infringement without an underlying act of direct infringement" (internal quotation marks omitted)). As a result, the central facts of the suit, in terms of both Defendants' liability, still occurred in North Carolina. Furthermore, based on the allegations in the complaint, Quintiles's alleged role in the infringement appears minimal. Accordingly, the Court finds the central facts of this lawsuit occurred outside Plaintiffs' choice of forum, and Plaintiffs' choice of forum should not be accorded deference.

The Court must also consider "whether the claim arose elsewhere" in deciding whether to grant transfer. *Jumara*, 55 F.3d at 879. The Court finds this factor favors transfer for the same reasons the Court found the central facts of the lawsuit occurred in North Carolina. *See Intendis, Inc. v. River's Edge Pharm., LLC*, No. 11-2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011) (equating central-facts-of-lawsuit analysis to origin-of-claim analysis).

The next factor the Court must consider is the convenience of the parties. *See Jumara*, 55 F.3d at 879. This factor favors transfer because it will be inconvenient for BDSI to litigate in New Jersey since it will likely have to produce most of the evidence in this case from its North Carolina headquarters. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Similarly, it will be inconvenient for Quintiles to litigate the case in New Jersey since much of the evidence relating to the alleged infringement will likely come from North Carolina. Moreover, it will not be inconvenient for Plaintiffs to travel to North Carolina since they would likely have to travel regardless of where this case is held. (*See* Compl. ¶ 8 (noting RBP's headquarters are in Virginia); Defs' Moving Br. 14 (noting MonoSol's facility where it developed the '167 Patent is in Indiana).) Additionally, Defendants validly and undisputedly assert that it will be less inconvenient for Plaintiffs to travel than Defendants since Plaintiffs are in a better financial position to travel than Defendants. (*See* Defs.' Moving Br. 14 (stating Suboxone has generated a $1.3 billion profit in 2013); *compare id.* (stating BDSI has not generated profits as of the time Defendants filed their initial brief)); *see also Jumara*, 55 F.3d at 879 (holding courts should consider the relative financial conditions of the parties when assessing this factor).

Another factor the Court must consider is the convenience of the witnesses. *See Jumara*, 55 F.3d at 879. This factor is neutral in the transfer analysis as Defendants assert that only party witnesses will be unavailable for trial. (Defs.' Moving Br. 13-14.); *see Platinum Partners Value Aribtrage Fund, L.P. v. TD Bank, N.A.*, No. 10-6457, 2011 WL 3329087, at *5 (D.N.J. Aug. 2, 2011) (holding that convenience of party witnesses is neutral to the transfer analysis because party witnesses "are presumed to be willing to testify in either forum"). Moreover, the location of books and records is also neutral because it is likely that books and records could be produced in either

9

forum. *See Jumara*, 55 F.3d at 879 (noting this is a factor a court should consider in a transfer analysis); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) (recognizing that modern technology has "substantially reduced" the "burden of having to litigate in a distant forum.").

### 2.     Public Interest Factors[7]

The Court must consider "practical considerations that could have made the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. This factor favors transfer as the pending case in the EDNC relates to the same product at issue in this case, involves nearly the same parties, and it may involve similar testimony. *See Bayer Pharma*, 2014 WL 2516412, at *8 (holding this factor favored transfer when these same factors existed, even though different patents were at issue in the two cases).

Plaintiffs, relying on *Teva Pharmaceutical Industries Ltd. v. Astrazeneca Pharmaceuticals LP*, argue that the fact that two different patents are at issue in this district and in the EDNC should preclude transfer. *See Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP*, No. 08-4786, 2009 WL 2616816, at *6-8 (E.D. Pa. Aug. 24, 2009) (denying transfer where the same allegedly infringing product in a patent infringement action was at issue in a similar suit in a different district, because the patents in the two suits were different). The Court finds *Teva* distinguishable because the patents at issue here are much more related: both the '080 Patent at issue in the EDNC and the '167 Patent at issue in this case relate to the same component part of the drug (the film). *See Teva*, 2009 WL 2616816, at *6 (one patent related to one part of the drug (the active ingredient) and

---

[7] The Court will only address the public interest factors of practical considerations and local interests, because the parties have not briefed the remaining factors, and Defendants, in fact, concede that they are neutral to the transfer analysis. (Defs.' Moving Br. 19.) Accordingly, the Court will treat these remaining factors as neutral.

10

other patent related to a different part of the drug (the tablet in which the drug dosage was delivered)).

An additional public interest factor this Court must consider is the District of New Jersey's "local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. This Court finds that this jurisdiction's local interests are outweighed by the EDNC's because the EDNC's interests arise from the development and production of the allegedly infringing product. *See In re-Hoffman—La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (holding local interest factor favored transfer where allegedly infringing product was developed in transferee district). Accordingly, this factor favors transfer.

### 3. Balancing of Factors

The majority of the factors the Court considered favor transfer. Furthermore, the majority of the factors that do not favor transfer are neutral. Accordingly, the Court finds Defendants have met their burden, and the motion to transfer is granted.[8]

### IV. Conclusion

For the reasons set forth above, Defendants' motion to transfer is granted. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: July 20, 2015

---

[8] The Court may address a motion to transfer before a Rule 12(b)(6) motion when confronted with both, and once a court grants a motion to transfer, it need not decide the Rule 12(b)(6) motion. *Willis v. Chase Home Finance*, 923 F. Supp. 2d 89, 92 (D.D.C. 2013) (relying on *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432-33 (2007)).